Oliver P. Cleary [SB#168440]
468 N. Camden Drive, #200
Beverly Hills, CA 90210
T: (424) 324-8874
olivercleary@gmail.com

Attorney for defendant,
Yichao Chen

UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No.: CR-18-335-AB |
| Plaintiff, | Motions of Defendant Chen: |
| vs. | 1) To Dismiss the Indictment, |
| | 2) To Sever, and, |
| | 3) To Transfer Venue. |
| YICHAO CHEN, | |
| Defendant. | |

TO:  THE CLERK OF THE ABOVE-ENTITLED COURT AND THE
UNITED STATES OF AMERICA AND ITS ATTORNEY OF RECORD:

PLEASE TAKE NOTICE that on a date and time to be set by the Court and in the courtroom of the Honorable André Birotte, Jr., United States District Judge, defendant CHEN, by and through counsel, Oliver P. Cleary, pursuant to Federal Rules of Criminal Procedure § 7, will move this court for an Order to dismiss Count One, charging him with conspiracy to possess with intent to distribute controlled substances in violation of 21 U.S.C. § 846, and, Count Twenty-Three, charging him with conspiracy to launder monetary instruments in

violation of Title 18, U.S.C. § 1956 (h), or, for such other relief the Court may deem appropriate.  Should the Court deny the defendant's motion to dismiss, then, defendant moves to sever his case from the co-defendants, and, transfer his trial to the proper venue, the Eastern District of New York.

The grounds for the motion to dismiss the indictment as it denies defendant's right to due process of law and the notice provisions as guaranteed by the Fifth Amendment and Sixth Amendment to the U.S. Constitution and the Speedy Trial Act. The motions to sever and transfer venue are brought under Federal Rules of Criminal Procedure § 7 and 14.

This motion is based upon the files and records in the above-captioned matter, the attached memorandum of points and authorities, and any and all other materials that may come to this Court's attention prior to or during the hearing of this motion.

Dated:   February 26, 2021                    Respectfully submitted,

                                              *s/s Oliver P. Cleary*
                                              Attorney for defendant,
                                              Yichao Chen

TABLE OF CONTENTS

Table of Authorities…………………………………………………..………4

I.      INTRODUCTION……………………………………………………….6

        MEMORANDUM OF POINTS & AUTHORITIES

II.     THE NECESSARY ELEMENTS OF THE CRIMES MUST BE

        ALLEGED IN THE INDICTMENT…………………………………….6

III.    1956(a)(1)(B)(i) REQUIRES CONCEALMENT, KNOWING

        PROCEEDS UNLAWFULLY DERIVED AND A FINANCIAL

        TRANSACTION……………………………………………...…………8

IV.     *IGNORANTIA FACTI EXCUSAT* ……………...…………………12

V.      INDICTMENT FAILS TO ALLEGE AN ESSENTIAL ELEMENT OF

        TITLE 18 § 1956(A)(1)(B)(i) …………………………………………12

        a.  CHEN is a Transporter not a Launderer………..………..…………13

        b.  Financial Transaction is a Necessary Element of the Money

            Laundering Statute under 1956 (h)…………………………………15

        c.  Hiding Drug Proceeds Is Not Laundering…………………….…..17

VI.     DEFENDANT'S CASE SHOULD BE SEVERED TO AVOID UNFAIR

        PREJUDICE AT TRIAL…………………………………………..…17

        a.  Without Severance, the Jury May Find CHEN Guilty by Association,

            Impinging on his Due Process Rights………………………………18

VII.    SPEEDY TRIAL ACT REQUIRES DISMISSAL…………………..19

VIII.   VENUE IS NEW YORK THIS CASE MUST BE TRANSFERRED…20

CONCLUSION……………………………………………………………...21

TABLE OF AUTHORITIES

<u>Cases:</u>

*Hamling v. United States,* 418 U.S. 87 (1974)…………………………………....7

*United States  v. Berger* 473 F.3d 1080 (2007)…………………………………..7

*Russell v. United States,* 369 U.S. 749 (1962)………..………………….....8, 13, 15

*United States v. Whitehorn*, 710 F. Supp. 803, 817 (D.D.C. 1989)…..………….10

*United States v. Brown*, 912 F.2d 1040, 1043 (9th Cir. 1990)…..……………….10

*United States v. Willey*, 57 F.3d 1374 (5th Cir. 1995)…………………………….10

*United States v. Burns*,162 F.3d 840 (5th Cir.1998)…………....………………….10

*United States v. Valdez*, 726 F.3d 684 (5th Cir. 2013)………………………….10

*United States v. Macias-Muniz*, 74 F.3d 545 (5th Cir.)…………………………11

*United States v. Whitehorn*, 710 F. Supp. 803 (D.D.C. 1989)…………………..12

*United States v. Reed* 77 F.3d 139 (6th Cir. 1996)………………………………12

*United States v. Dimeck*, 24 F.3d 1239(10th Cir. 1994)……...…………………12

*United States v. Puig-Infante*, 19 F.3d 929 (5th Cir. 1994)…...…………..12, 15, 16

*United States v. Gaytan*, 74 F.3d 545 (5th Cir)…………………………………12

*United States v. Garza*, 118 F.3d 278 (5th Cir. 1997)…………………………...12

*Kotteakos v. United States*, 328 US 750, 773, 776………………………………13

*United States v. Brown*, 912 F.2d 1040 (9th Cir. 1990)…………………………13

*United States v. Dickey,* 736 F.2d 571, 585 (10th Cir. 1984)…..………………13

*United States v. Horn*, 946 F.2d 738 (10th Cir. 1991)……………….....………13

*United States v. Pheaster*, 544 F.2d 353 (9th Cir.1976)………………….13, 14, 20

*Batchelor v. United States*, 156 U.S. 426, (1895)………………………………13

*United States v. Huff*, 512 F.2d 66 (5th Cir.1975)………………………..………13

*Nelson v. United States*, 406 F.2d 1136 (10th Cir.1969)……..…………..………13

*United States v. Root*, 366 F.2d 377 (9th Cir. 1966………………………………13

*United States v. Gonzalez-Rodriguez,* 966 F.2d 918 (5th Cir.1992)……………14

*United States v. Samour*, 9 F.3d 531 (6th Cir. 1993)..……………………16

*United States v. Ramirez*, 954 F.2d 1035 (5th Cir. 1992)……...…………….17

*Regalado Cuellar v. United States*, 553 U.S. 550 (2008)………..............…18

*United States v. Seifert*, 648 F.2d 557, 563 (9th Cir. 1980)…………………18

*United States v. Mayfield*, 189 F.3d 895 (9th Cir. 1999)…………………...…19

*United States v. Zafiro*, 560 U.S. 534(1993)…………………………………19

*United States v. Tootick*, 952 F.2d 1078 (9th Cir. 1991)………………...…….19

*United States v. Doe*, 655 F.2d 920……………………………………………...19

*United States v. Mardian*, 546 F.2d 973 (D.C. Cir. 1976)…………………...19

*United States v. Sampol*, 636 F.2d 621 (D.C. Cir. 1980)…………………….19

*United States v. Peterson*, 549 F.2d 654 (9th Cir.1977)…………………………19

*United States v. Basurto*, 497 F.2d 781 (9th Cir. 1974)…………………………19

*Krulewich v. United States*, 336 U.S. 440 (1949)………………………………19

*United States v. DeRosa*, 670 F.2d 889(9th Cir. 1982)……………..………...20

*United States v. Mehrmanesh*, 652 F.2d 766 (9th Cir. 1981)……………………20

*United States v. Nance*, 666 F.2d 353 (9th Cir. 1982)…………………………20

*United States v. Taylor*, 487 U.S. 326, 332 (1988)………...…………………21

*United States v. Engstrom*, 7 F.3d 1423 (9th Cir. 1993)…...……...…………21

*Platt v. Minnesota Mining & mfg. Co.,* 376 U.S. 240 (1964)…………………22

*United States v. Cabrales*, 524 US 1, 3 (1998)…...……………………..22

Statutes:

18 U.S.C. §1956(a)(1)(B)(i)…………..……………..7, 8, 9, 10, 13, 14, 17, 18, 22

F.R.Crim.P. 7 (c) (3)…………………………………...…....………………8

18 U.S.C. § 1956 (c)(1)……………………………………………9, 11

18 U.S.C. § 1956 (c)(4)……………………………………………9, 12

Fifth Amendment Indictment clause………………………………………..7,8

Sixth Amendment Notice clause……………………………………………7, 8

F.R.Crim.P. 7 (c) ………………………………….....………………….. 8

21 U.S.C. §846…............……………………………………………….9

18 U.S.C. 1956(a)(1)(A)(i)………………………………………………....17

Fed R. Crim. Pro. 14(a)…………………………………………………18

Speedy Trial Act, 18 U.S.C. § 3161 et seq………………………………….20

FRCrP  21(b); §14:5……………………………………………21, 22

Reference Materials:

Black's Law Dictionary, 7th Edition, Bayan A. Garner, Editor in Chief………..10

MEMORANDUM OF POINTS & AUTHORITIES
I.
INTRODUCTION

On January 18, 2017, Yichao CHEN ("CHEN") was arrested in a motel room at a Red Roof Inn in the Flushing neighborhood of New York City. At the time, there was $436,000 in cash bundled on the bed, together with a money counting machine, rubber bands, and, heat seal bags. The occupants of the room, Yichao CHEN and Jaize XIA were both arrested.

The Payan-Castillo Indictment ("Indictment") was filed on May 31, 2018 and describes an international money-laundering conspiracy where, in the usual manner, a group of drug couriers ferry fentanyl, cocaine, heroin, and, methamphetamine from Mexico to the United States where it is consumed. The proceeds from the sales of the drugs are then repatriated back to Mexico in the form of profits.

The defendant seeks to show how the indictment falls woefully short of the due process and fair notice requirements of the U.S. Constitution by failing to allege the essential elements of Title 18 § 1956(a)(1)(B)(i). CHEN also seeks to sever his trial from that of his co-defendants, and, the appropriate venue being the Eastern District of New York, his trial should be transferred.

II.
THE NECESSARY ELEMENTS OF THE CRIMES
MUST BE ALLEGED IN THE INDICTMENT

An indictment must contain the elements of the offense charged that fairly informs a defendant of the charge against which he must defend and enable him to plead an acquittal or conviction in bar of future prosecutions for the same

offense.  Hamling v. United States, 418 U.S. 87, 117, 94 S.Ct. 2887.   Although an indictment "should be read in its entirety, construed according to common sense, and interpreted to include facts which are necessarily implied." Berger, 473 F.3d at 1103 (quoting United States v. King, 200 F.3 1207, 1217 (9th Cir. 1999)  Whenever the facts or the elements of the crimes charged are omitted, the defendant may move to dismiss the indictment or information or to reverse a conviction on the ground the Indictment was misleading and prejudicial. Fed.R.Crim.P. 7(c)(3).

The Supreme Court has held that the Fifth Amendment Indictment clause and the Sixth Amendment notice clause as reflected in the Federal Rules of Criminal Procedure 7(c), require that the indictment "sufficiently apprise the defendant of what he must be prepared to meet." Russell v. United States, 369 US 749, 763-64 (1962).  The instant indictment is fatally defective as it fails to provide CHEN with notice of the particular manner and means by which he collected, laundered, and repatriated  millions of dollars in drug proceeds.  (See Document 1, p. 5, ¶ 5, l. 1-2)

Nor does it state how defendants "sought to conceal the nature, source ownership, and control of the illegal drug proceed" by simply "arranging and conducting cash deliveries involving anonymous couriers in parking lots, on street corners, and in hotel rooms." (Document 1, p. 5, l. 17-21)  The fact that "money couriers…would package, count, store, collect, transport, and deliver hundreds of thousands of dollars of cash drug proceeds" does not constitute an offense under §1956 (a)(1)(B)(i). (Document 1, p. 6,¶ 9, l. 8-11)  Missing from this indictment are the acts of concealment, how CHEN knew the proceeds in the motel room were unlawfully derived, and, what financial transaction took place as required.  For this omission, CHEN asks this court to dismiss Count I and XXIII of the Indictment under Federal Rule of Criminal Procedure 7 and the Fifth and Sixth Amendment to

the United States Constitution.  In addition, CHEN submits the following points and authorities in support.

### MEMORANDUM OF POINTS AND AUTHORITIES

### III.

### 1956(a)(1)(B)(i) REQUIRES CONCEALMENT, KNOWING PROCEEDS ARE UNLAWFULLY DERIVED AND A FINANCIAL TRANSACTION

In Count I, defendant CHEN is charged with Conspiracy to Commit Money Laundering, however, the Indictment fails to allege the necessary elements to constitute a violation of Title 18, USC § 1956(a)(1)(B)(i) which states in pertinent part:

> Whoever, knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, conducts or attempts to conduct such a financial transaction which in fact involves the proceeds of specified unlawful activity-knowing that the transaction is designed in whole or in part to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity;  Shall be sentenced to a fine…. or imprisonment…., or both.
>
> §1956 (c) (1) defines the term "knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity" which means that the person knew the property involved in the transaction represented proceeds from some form, though not necessarily which form, of activity that constitutes a felony under State, Federal, or foreign law.
>
> §1956 (c) (4) defines the term "financial transaction" which means (A) a transaction which in any degree affects interstate or foreign commerce (i) involving the movement of funds by wire or other means or (ii) involving one or more monetary instruments, or (iii) involving the transfer of title to any real property, vehicle, vessel, or aircraft, or (B) a transaction involving the use of a financial institution which is engaged in, or the activities of which affect, interstate or foreign commerce in any way or degree.

a.  <u>The concealment clause requires there be concealment.</u>

The first paragraph of § 1956(a)(1)(b)(i), otherwise known as the concealment clause, requires the government to establish that the dirty money transactions are "designed ... to conceal or disguise the nature, the location, the source, the ownership, or the control" of the money involved. 18 U.S.C. § 1956(a)(1)(B)(i); see <u>United States v. Brown</u>, 553 F.3d 768, 786 (5th Cir.2008).

To conceal or disguise the nature, location, source, ownership or control means that the financial transaction had the purpose, not merely the effect, of "mak[ing] it more difficult for the government to trace and demonstrate the nature of th[e] funds." <u>Brown</u>, 553 F.3d at 787 (citing <u>Cuellar v. United States</u>, 553 U.S. 550, 128 S.Ct. 1994, 170 L.Ed.2d 942 (2008)). In other words, to conceal the proceeds, one must convert them into a different and more legitimate-appearing form.

Here, to conceal implies that more than a trivial motivation to conceal must be proved.  In <u>United States v. Valdez</u>, 726 F.3d 684, 690 (5th Cir. 2013), the government relied on Valdez's transfers of funds from his operating accounts to investment accounts, and on Valdez's purchases of property and investments—all done openly, in his name—as proof of concealment money laundering. None of the transactions pointed to by the government showed a specific intent to conceal the nature, location, source or ownership of the funds used. Valdez did not use false names, third parties, or any particularly complicated financial maneuvers, which are usual hallmarks of an intent to conceal. (See <u>United States v. Burns</u>,162 F.3d 840, 848–49 (5th Cir.1998); <u>Willey</u>, 57 F.3d at 1385 (noting that "a showing of simply spending money in one's own name will generally not support a money laundering conviction"). There is virtually no evidence of a design to conceal,

beyond the "trivial motivation" shown by the acquiring of assets with the proceeds of criminal activity, which <u>Willey</u> instructs is insufficient to establish the necessary intent. <u>Willey</u>,  57 F.3d at 1384.) Here, there is insufficient evidence of concealment money laundering.

b.  <u>The proceeds must be knowingly derived from unlawful proceeds.</u>

The linchpin under § 1956(c)(1) is proof that the proceeds were known to be from specified unlawful activity.  Here, the Indictment fails to allege defendant CHEN knew the proceeds were from illegal activity because the defendant was not the one who received the proceeds from the sale of illegal drugs. The court in <u>United States v. Macias-Muniz</u>, 74 F.3d 545 (5th Cir.) reversed a money laundering conviction for insufficient evidence defendant had knowledge the proceeds were derived from unlawful activity. The court opined:

"[A]a transaction to pay for illegal drugs is not money laundering, because the funds involved are not proceeds of an unlawful activity when the transaction occurs, but become so only after the transaction is completed; the second, …transportation of the money from Florida to Laredo, involves the proceeds of unlawful activity but is not a transaction."

Applying this standard, the Court reversed Macias's conviction because the money did not become the proceeds of drug trafficking, however, until Macias received it. Nor is there any evidence indicating the money was obtained through unlawful activity. Thus, while it is true that several transactions took place, none involved the proceeds of unlawful activity."

c.  <u>A financial transaction is a required element of money laundering.</u>

The indictment fails to allege how CHEN knowingly conducted or attempted

to conduct a financial transaction in whole or in part to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds.  A blanket allegation without more fails the specificity requirement and requires dismissal of the Count.  United States v. Whitehorn, 710 F. Supp. 803, 817 (D.D.C. 1989) (rejecting argument that conspiracy count was impermissibly vague where manner and means of conspiracy was set forth with specificity), rev'd on other grounds, 888 F.2d 1406 (D.C. Cir. 1989)  The linchpin under § 1956(c)(4), or whether the conduct meets the definition of a financial transaction, is whether a disposition of the funds has taken place.  United States v. Reed 77 F.3d 139 (6th Cir. 1996) Otherwise, the conduct amounts to nothing more than mere transportation.  United States v. Dimeck, 24 F.3d 1239, 1246 (10th Cir. 1994); United States v. Puig-Infante, 19 F.3d at 937-39.  Because money laundering does not occur until after a financial transaction has taken place, defendant CHEN's indictment is flawed.

In United States v. Gaytan, 74 F.3d 545, 555 (5th Cir)  the delivery of funds to pay for illegal drugs did not meet the statutory imprimatur of a "financial transaction" because it was before the transaction was complete.  A defendant's conviction under Title 18 § 1956(c)(4) was reversed where "[n]o proof of wire transfers or other transactions involving currency were presented." United States v. Garza, 118 F.3d 278, 284 (5th Cir. 1997).  Here, the Indictment lacks the necessary element of a financial transaction, and, therefore should be dismissed.

## IV.
### *IGNORANTIA FACTI EXCUSAT* [1]

---

[1]  Ignorance of fact is an excuse and whatever is done under mistaken impression of a material fact is excused or provides grounds for relief.  Black's Law Dictionary, 7th Edition, Bayan A. Garner, Editor in Chief.

Conspiracy is frequently used by the government to cast a wide net that captures many players.  Kotteakos v. United States, 328 US 750, 773, 776.   As is well settled, mere participation in single deed with ignorance about the scope or facts of a charged conspiracy is insufficient to sustain a conviction. United States v. Brown, 912 F.2d 1040, 1043 (9th Cir. 1990).  It is not enough for the government to show only a "mere association" with conspirators known to be involved in crime.  United States v. Dickey, 736 F.2d 571, 585 (10th Cir. 1984) (citation omitted), cert. denied.  Finally, "[c]asual transactions" between the defendant and conspirators known to be involved in crime also falls short of the marque. United States v. Horn, 946 F.2d at 741 (10th Cir. 1999).

V.

INDICTMENT FAILS TO ALLEGE AN ESSENTIAL
ELEMENT OF TITLE 18 § 1956(A)(1)(B)(i)

It is of paramount importance to the rights of the accused that the indictment contain an adequate recitation of each component of the crime that the Government must establish. One test used to evaluate the sufficiency of an indictment is "whether the indictment `contains the elements of the offense intended to be charged, "and sufficiently apprises the defendant of what he must be prepared to meet." Russell v. United States, 369 U.S. 749, 763, 82 S.Ct. 1038, 1047, 8 L.Ed.2d 240 (1962), quoted in United States v. Pheaster, 544 F.2d 353, 360 (9th Cir.1976). Here, a failure to charge every essential element of the crime is by no means a mere technicality.

Where, as here, an indictment fails to detail each element of the charged offense generally constitutes a fatal defect. See, e. g., Batchelor v. United States, 156 U.S. 426, 15 S.Ct. 446, 39 L.Ed. 478 (1895); United States v. Huff, 512 F.2d 66 (5th

Cir.1975); Nelson v. United States, 406 F.2d 1136 (10th Cir.1969); United States v. Root, 366 F.2d 377 (9th Cir.), cert. denied, 386 U.S. 912, 87 S.Ct. 861, 17 L.Ed.2d 784 (1966).

a.  CHEN is a Transporter not a Launderer

Here, the government alleges through conspiracy --- using encoded electronic communications, passcodes, and serial numbers to arrange and conduct cash deliveries involving anonymous couriers in parking lots, on street corners, and in hotel rooms--- defendants sought to conceal the nature, sources, ownership, and control of the illegal drugs proceeds in violation of § 1956(a)(1)(B)(i). Other circuits have examined whether, as here, the possession and transportation of illegal proceeds constitutes money laundering under § 1956(a)(1)(B)(i). In United States v. Gonzalez-Rodriguez, 966 F.2d 918, 925 (5th Cir.1992), the Fifth Circuit examined whether the defendant's possession or transportation of drug money was "designed to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified illegal activity" under 18 U.S.C. § 1956(a)(1)(B)(i).

Emma Gonzalez-Rodriguez was questioned at the Houston airport.  She readily disclosed and turned over the $8000 she was carrying and made no false exculpatory statements about the money. The Court reversed the money laundering conviction for lack of evidence establishing the Emma was engaged in a "financial transaction…designed to disguise the nature, source or ownership of those proceeds." Id. at 924.

In examining the money laundering statute, the Court found the definition of transaction to include "a purchase, sale, loan, pledge, gift, transfer, delivery, or other disposition" of proceeds derived from specified illegal activity, including drug transaction.  Id.  So, even where the cash drug proceeds were found to be

proceeds from specified illegal activity, the Court still found the transaction was no more than the mere transportation of funds from point A to point B because the necessary element that there be a financial transaction.

The court rejected the government's argument to interpret "financial transaction" broadly, however ordinary on their face, whenever the proceeds involved unlawful activity, stating that would turn the money laundering statute into a money spending statute.  This interpretation, the court opined, "would be contrary to Congress' expressly stated intent that the transactions being criminalized in the statute are those transactions "*designed to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity*." Id. (emphasis added)

Here, CHEN actions described in the *Payan-Castillo* Indictment fails to meet the statutory element that there be a transaction and that it be designed to conceal or disguise the source or nature of the proceeds. (*emphasis added*)  The delivery of proceeds is not a *transaction* designed to conceal or disguised the source and nature of the proceeds.  (*emphasis added*)  Because the Indictment fails to allege a necessary element, namely, that CHEN conducted a transaction designed to conceal or disguise the nature of the proceeds.  This defect is fatal. As such, the Indictment must be dismissed.

b.   Financial Transaction is a Necessary Element of the Money Laundering Statute:

In a case examining the necessary elements of the money laundering statute, the Fifth Circuit found the government's evidence fell short in  United States v. Puig-Infante, 19 F.3d 929 (5th Cir. 1994).   There, the Fifth Circuit agreed the government was required to prove that the defendant engaged in a financial transaction involving the proceeds of an unlawful activity finding the money

15

Abigail Puig received in exchange for the marihuana was the proceeds of an unlawful activity, but, her mere subsequent transportation of those proceeds by car does not constitute a "financial transaction" within the meaning of the statute. U.S. v. Puig-Infante, 19 F.3d 929, 938 (5th Cir. 1994)

The court opined: "mere transportation without disposition of illegal drug proceeds is not a prohibited transaction under the money laundering statute" even though Abigail Puig-Infante was found to be in possession of $47,000 in cash she had exchanged for marijuana.  Id.

The Fifth Circuit explained a financial transaction must be <u>at the very least</u> be a "transaction" ie. "a purchase, sale, loan, pledge, gift, transfer, delivery, or other disposition…." or some action involving a financial institution or its facilities. The court continued, "the statute makes plain that for something (not involving a financial institution or its facilities) to be a transaction, it must be a "disposition." (*emphasis added*).

"Disposition" most commonly means " a placing elsewhere, a giving over to the care or possession of another."" <u>Id.</u> at 938. Here, as in <u>Puig-Infante</u>, there is no allegation that CHEN placed the money into the care or possession of another. There is no relinquishing of the property.  CHEN conduct is described as being in a motel room with $436,000 and change in alleged drug proceeds.  Not in the process of engaging in any transaction or attempting some sort of disposition of the proceeds as required.

In <u>Puig-Infante,</u> the Fifth Circuit cited several examples similar to the case at bar.  First, the Court cited the Sixth Circuit's opinion in <u>United States v. Samour</u>, 9 F.3d 531 (6th Cir. 1993), which held that "merely transporting cash does not meet the definition of `financial transaction' for purposes of the money laundering statute."

The Sixth Circuit, in <u>United States v. Samour</u>, 9 F.3d 531 (6th Cir. 1993), considered whether transporting drug money concealed in an automobile or hidden on one's person constitutes a violation of § 1956(a)(1)(A)(i) or (a)(1)(B)(i). The court held that "merely transporting cash does not meet the definition of `financial transaction' for purposes of the money laundering statute." Id. at 536.
In *Samour,* the defendant was caught transporting $30,000. The Sixth Circuit found that Samour merely transported cash and therefore did not engage in a "financial transaction." Moreover, the court expressed its "reluctan[ce] to conclude that a physical transportation of money, whether it is domestic or international, constitutes a `financial transaction' within the meaning of section 1956(a)(1) because Congress specifically created a separate subsection for transportation of funds."

In <u>United States v. Ramirez</u>, 954 F.2d 1035 (5th Cir. 1992), the Court reversed a money laundering conviction where the government's proof was insufficient to establish a financial transaction under 18 U.S.C. § 1956. In <u>Ramirez</u>, DEA agents searched a house used by the drug trafficking ring of which the defendant was a part and discovered a shoe box containing $132,980 in cash. In concluding that although "the jury could infer that the money found [in the house] represented proceeds from illegal activity," the evidence did not "allow the inference that Sanchez transferred, delivered, moved, or otherwise disposed of the money as required by statute."

The reasoning and conclusions above demonstrate the elements of the money laundering statute require more than what this Indictment alleges, namely, a financial transaction.  This is a fatal defect in this case.  For this, the Court should dismiss Counts I and XXIII of the indictment.

### c. Hiding Drug Proceeds Is Not Laundering

The Supreme Court in Regalado Cuellar v. United States, 553 U.S. 550, 128 S.Ct. 1994 (2008) found that transporting funds in a secret compartment of a vehicle did not conceal or disguise the nature, source, ownership, or control of funds to meet the definition of money.  The Supreme Court stated: "merely hiding funds during transportation is not sufficient to violate" the statute because using "secretive means when transporting funds is 'weak' evidence of intending to conceal their source or ownership."  Id.

Where, as here, the indictment merely casts the accused in a suspicious light, and not meet the definition of money laundering, the court's remedy is to dismiss. For the reasons above, this court should grant the defendant's motion dismissing Counts I and XXIII of the Indictment.

## VI.
## DEFENDANT' CASE SHOULD BE SEVERED
## TO AVOID UNFAIR PREJUDICE AT TRIAL

Defendant CHEN's rights to due process and a fair trial require that his trial be severed from the others.  Rule 14(a) provides for the severance of defendants under certain conditions: [i]if the joinder of offenses or defendants in an indictment, an information, or a consolidation for trial appears to prejudice a defendant..., the court may order that his trial be severed or provide any other relief that justice requires. Fed. R. Crim. P. 14 (2007). Although a motion for severance is addressed to the trial court's discretion, see, e.g., United States v. Seifert, 648 F.2d 557, 563 (9th Cir. 1980), the granting of such a severance is warranted when there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence. United States v. Mayfield, 189 F.3d 895, 899 (9th Cir. 1999)

1
2
(quoting United States v. Zafiro, 560 U.S. 534, 539 (1993)); United States v. Tootick, 952 F.2d 1078, 1083 (9th Cir. 1991).

3
4
5
6
To warrant the issuance of a severance, the defendant must demonstrate that a joint trial is "so manifestly prejudicial that it outweighs the dominant concern with judicial economy and compels the exercise of the court's discretion to sever." Doe, 655 F.2d at 926 (citations omitted).  See also Zafiro, 506 U.S. at 539.

7
8
9
10
Here, a joint trial would greatly prejudice CHEN where, as here, the case against CHEN is de minimis  when compared with that of the co-defendants. United States v. Mardian, 546 F.2d 973, 980-81 (D.C. Cir. 1976); United States v. Sampol, 636 F.2d 621, 645-47 (D.C. Cir. 1980).

11
12
    a.  Without Severance, the Jury May Find CHEN Guilty by Association, Impinging on his Due Process Rights.

13
14
15
16
17
18
19
20
21
It is important to note that "[n]either mere association and activity with a co-conspirator nor even knowledge of the conspiracy's existence . . . meets the standards [required] to link a defendant to the conspiracy charge." United States v. Peterson, 549 F.2d 654, 658 (9th Cir.1977).  "Mere association and activity with a co-conspirator does not meet the test."  United States v. Basurto, 497 F.2d 781, 793 (9th Cir. 1974) (citation omitted).  A jury ordinarily experiences great difficulty in following admonishing instructions and in keeping separate evidence that is relevant only to co-defendants.

22
23
24
25
26
27
In most cases, [a] co-defendant in a conspiracy trial occupies an uneasy seat. There generally will be evidence of wrongdoing by somebody.  It is difficult for the individual to make his own case stand on its own merits in the minds of jurors who are ready to believe that birds of a feather are flocked together. Krulewitch v. United States, 336 U.S. 440, 454 (1949) (Jackson, J., Concurring).  If a jury cannot compartmentalize the evidence that pertains to each defendant, the trial court runs

28

the risk of allowing a conviction based upon a defendant's association with incriminating evidence alone.

The jury cannot reasonably be expected to compartmentalize the evidence as it relates to CHEN alone.  Cf. United States v. DeRosa, 670 F.2d 889, 898-99 (9th Cir. 1982) (noting that highly limited implicit connections between co-defendants may allow the jury to "easily compartmentalize the evidence").  In this case, there is a considerable amount of evidence that evidences the co-defendant's characters and implicates them as being responsible for the crimes charged.  Most of this evidence would probably be admissible against them in his separate trial.  However, in a separate trial of CHEN, a jury would not be permitted to hear the prejudicial evidence pointing towards the co-conspirator's guilt.  Since CHEN will likely be prejudiced by evidence admissible only against his co-defendants, his rights can only be protected by severance of the remaining defendants.

## VII.
## SPEEDY TRIAL ACT REQUIRES DISMISSAL

Congress enacted the Speedy Trial Act, 18 U.S.C. § 3161 et seq., as part of its desire to provide greater protection against improper delay in criminal trials than afforded under the Sixth Amendment.  See United States v. Mehrmanesh, 652 F.2d 766, 769 (9th Cir. 1981); accord United States v. Nance, 666 F.2d 353, 360 (9th Cir. 1982).  It therefore provides specific timetables and remedies to ensure that criminal cases do not languish due to ordinary docket congestion or similar causes.  See Nance, 666 F.2d at 355-56.  The Act also "put teeth into the speedy trial guarantee" by mandating dismissal when its parameters were exceeded.  Mehrmanesh, 652 F.2d at 769.   If the time limits in the statute are exceeded, the district court must dismiss upon the defendant's motion.  See § 3162(a)(1) & (2); United States v. Taylor, 487 U.S. 326, 332 (1988).  The trial court's only discretion

is whether to dismiss with or without prejudice.  See <u>United States v. Engstrom</u>, 7 F.3d 1423, 1427 (9th Cir. 1993).

Defendant CHEN is presently charged in an Indictment filed on May 31, 2018 and has been on personal recognizance since his initial appearance on October 18, 2019.  There have been four waivers of the speedy trial.  The first order continued the trial to September 8, 2020,  the next order continued the trial to February 19, 2021, and, the third order expires March 16, 2021.  Defendant CHEN objected to the fourth stipulation which expires September 14, 2021.  Defendant CHEN objected to continuing his trial beyond March 16, 2021.  CHEN moves the court for an order dismissing the case with prejudice should he not be brought to trial on or before March 16, 2021.

VIII.

**VENUE IS NEW YORK THUS**
**CASE MUST BE TRANSFERRED**

The court may transfer a prosecution from the district in which the indictment is pending to another district for the convenience of parties and witnesses and in the interests of justice.  FRCrP  21(b); §14:5.  The rule provides for two kinds of motions that may be made by a defendant for a change of venue. He first is a motion on the grounds of unfair prejudice against the defendant that he cannot obtain a fair and impartial trial in the district where the case is pending. The second motion, applicable here, is when the alleged offense is to have been committed in more than one district.  In such a case the court, on defendant's motion, will be authorized to transfer the case to another district in which the commission of the offense is charged, if the court is satisfied it is in the interests of justice to do so.  (*See* Notes to Subdivision (a) and (b)., FRCrP 21)

It is in the interests of justice to transfer this case to the Eastern District of

New York where the offense is to have taken place and where the defendant currently resides.  The factors to be considered when evaluating the propriety of a Rule 21(b) request include, the location of; the defendant, possible witnesses, the events likely to be an issue, documents and records likely to be involved, and, any other special elements which might effect the transfer.  <u>Platt v. Minnesota Mining & mfg. Co.,</u> 376 U.S. 240, 243-44 (1964)  here, the defendant resides in New York where potential witnesses to the alleged conduct are also located.  In addition, the location of the scene of the alleged conduct is in Flushing  a neighborhood in the New York City area.  Finally, in <u>United States v. Cabrales,</u> 524 US 1, 3 (1998), the court examined the proper venue for a case involving the statute at issue in the case at bar, namely, Title 18, § 1956(a), money laundering, and found the location of the alleged "financial transaction" supporting the "money laundering" offenses rather than where the "specified unlawful activity" that generated the laundered funds occurred was the proper venue.

In <u>Cabrales</u>, the Supreme Court affirmed an 8th Circuit holding where Missouri, the situs of the drug trafficking activity that yielded the funds allegedly laundered was not the proper venue when the money laundering transactions began, continued, and were competed in Florida.  Because Cabrales deposited $40,000 in a Florida bank and made four separate withdrawals from that bank, venue was proper in Florida.  Here, CHEN is charged with conspiracy and the overt acts alleged to have taken place are limited to one act in a Red Roof Inn motel room in Flushing, New York.  The indictment alleges that CHEN attempted or engaged in a financial transaction in New York.  As such,  the Eastern District of New York is the proper venue. <u>Id.</u>

CONCLUSION

For the reasons stated, CHEN requests that this Court grant his motions.

Dated:          February 26, 2021                 Respectfully Submitted,
                                                  s/Oliver Cleary
                                                  Attorney for Defendant
                                                  Yichao Chen

Oliver P. Cleary [SB#168440]
468 N. CAMDEN DR., #200
BEVERLY HILLS, CA 90210
Tel. (424) 324-8874

Attorney for defendant,
    Yichao Chen

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

        Plaintiff,

   vs.

YICHAO CHEN,

        Defendant.

Case No.: CR-18-335-AB

CERTIFICATE OF SERVICE

IT IS HEREBY CERTIFIED THAT:

    I, Oliver Cleary, am a citizen of the United States and am at least eighteen years of age.  My business address is 468 N. Camden Dr., #200, Beverly Hills, CA 90210.

    I have caused service of <u>MOTIONS TO: DISMISS THE INDICTMENT, SEVER, AND, TRANSFER VENUE</u>

    The following recipients are currently on the list to receive e-mail notices for this case and have thus been served electronically at the following email addresses:

    Benedetto Balding, AUSA,  <u>Benedetto.balding@usdoj.gov</u>

    Carley Palmer, AUSA, carley.palmer@usdoj.gov

I declare under penalty of perjury that the foregoing is true and correct.

Executed on:    2/26/21        *s/Oliver Cleary*
                                      Attorney for Defendant
                                      Yichao Chen